**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LAURENCE FRANKS, et. al.          )
                Plaintiffs,)
        vs.          )
                 )
SALAZAR, et. al.          )
                 )
          Defendants.)

**Case No.: 1:09-CV-00942-RCL**

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD**

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD**

**I. Introduction**

    Plaintiffs Lawrence A. Franks, Steve Sellers, George Brown, Charles Robbins, Jesse R. Flowers, Jack Atcheson, and Conservation Force respectfully submit this Reply Memorandum in Support of Plaintiffs' Second Motion to Compel Supplementation of the Administrative Record. Plaintiffs will not repeat the points and authorities cited in their original motion and supporting memorandum, but reassert them as correct.

    Plaintiffs requests that the Court compel Defendants to supplement the administrative record with various items and documents that were before the decision-makers and were either directly or indirectly considered in the decision-making process regarding Plaintiffs' permit applications.  In the alternative, Plaintiffs request that these items and documents be included as extra-record evidence necessary for just and proper adjudication of this matter.

    The inclusion of the documents at issue is necessary in order to demonstrate that the Defendants have re-adopted the challenged criteria from the guidelines that Defendants agreed to

withdraw in *Safari Club International v. Babbitt*, Civ. No. 91-2523, (hereinafter, "*SCI*") before

this very Court and agreed to process future permits in the spirit of Res. Conf. 2.11 (Rev.).  In

ruling on multiple motions in that case, the Court granted the plaintiffs' motion for sanctions,

ordering that:

> 1. **Defendant shall not use the guidelines to deny permit applications**, until final guidelines are adopted.
>
> 2. **Defendant shall not deny any permit application without prior notice to this Court and plaintiff**, pending further order of this court.
> >       This order will ensure that defendant this time lives up to the representations made to this Court and plaintiff.  Any dispute about what criteria are being used and whether the Guidelines are being illegally applied will be presented to the Court **before any permit is denied**.
> >       . . . Although the court is not *now* exercising a contempt sanction, **defendant should be aware that violations of today's orders will not be treated lightly**.

*SCI v. Babbitt*, No. 91-2523, 1994 U.S. Dist. LEXIS 18183, at *33-34 (D.D.C. Dec. 15, 1994)

(emphasis added, italics in original).

The Court's language is plain: Defendants were **forbidden from using the challenged**

**guidelines** to deny elephant trophy import permit applications, and Defendants were **forbidden**

from denying **any** elephant trophy import permit applications without first notifying the Court

and plaintiff.

In consideration of promises made by Defendants, including "that the elephant trophy

import guidelines in dispute **are no longer in use or to be used** and their proposed adoption

have been withdrawn by notice in the Federal register," the case was eventually dismissed.  It

should be noted that the permits in issue herein are the very next permits applied for.  Order of

Dismissal, *Safari Club International v. Babbitt*, Civ. No. 91-2523 (RCL) (March 30, 1995) (attached).

Now, Defendants have denied elephant trophy import permit applications using criteria analogous to the prohibited guidelines.  Once again the criteria are unpublished, are of the same substance formerly forbidden, and are contrary to Res. Conf. 2.11 (Rev.) of CITES.  Despite the obvious, Defendants are attempting to sever any connection between their latest denials and the order and dismissal stipulation forbidding them from making such denials.  Inclusion of the requested documents is necessary, as they were before Defendants and (directly and indirectly) considered by Defendants in making the permit decisions at bar, and therefore are an important component of the administrative record in this case.  Without them, the administrative record is incomplete and does not adequately represent the scope and basis of the decade-long conflict between the parties.

## II. Standard of Law

Under ordinary circumstances, "review [of agency action] is to be based on the **full** administrative record that was before the Secretary at the time he made his decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (emphasis added).  This Circuit has adopted a policy that a party may not supplement the record after a decision has been made "unless they can demonstrate unusual circumstances justifying a departure from this general rule." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008).  One of those unusual circumstances occurs "if petitioners made a *prima facie* showing that the agency excluded from the record evidence adverse to its position." *Kent County, Delaware Levy Court v. United States EPA,* 963 F.2d 391, 396 (D.C. Cir. 1992).

The APA directs a court to "review the **whole** record." 5 U.S.C. 706 (emphasis added). The Courts in this Circuit have interpreted the "whole record" to include "all documents and materials that the agency 'directly or **indirectly** considered' [and nothing] more nor less." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d. 1, 4 (D.D.C. 2006), quoting *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006).

An administrative record may be "supplemented" in one of two ways: either by 1.) including evidence that the agency considered (directly or indirectly) but excluded from the record, or 2.) adding extra-record evidence that was not necessarily considered by the agency but which is necessary for just adjudication of the issue. *See id*. at 5. The omitted documents were considered, at least "indirectly," or are extra-record information that should have been considered, or both.

An "agency may not skew the record its favor by excluding pertinent but unfavorable information. […] Nor may the agency exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 196 (D.D.C. 2005) (citations omitted). "'[T]o review less than the full administrative record might allow a party to withhold evidence unfavorable to its case.'" *Fund for Animals*, 391 F. Supp. 2d at 196, quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F. 2d 788, 792 (D.C. Cir. 1984).

"Supplementation of the administrative record is also warranted in challenges of the procedural validity of an agency's action," as herein. *Fund for Animals,* 391 F. Supp. 2d at 199.

Regarding extra-record information, the D.C. Circuit recognizes eight instances where inclusion of such information is appropriate:

1.   when agency action is not adequately explained in the record before the court;
2.   when the agency **failed to consider factors which are relevant to its final decision**;
3.   when an **agency considered evidence which it failed to include in the record**;
4.   when a case is so **complex** that a court needs more evidence to enable it to understand the issues clearly;
5.   in cases where evidence arising after the agency action shows whether the decision was correct or not;
6.   in cases where agencies are sued for a **failure to take action**;
7.   in cases arising under the National Environmental Policy Act; and
8.   in cases where **relief is at issue**, especially at the preliminary injunction stage.

*Delano v. Roche*, 391 F. Supp. 2d 79, 88 (D.D.C. 2005) (emphasis added), citing *Esch v. Yeutter*,

876 F. 2d 976, 991 (D.C. Cir. 1989).

> Supplementation of the record may be necessary when an agency excludes information adverse to its position from the administrative record. […] A plaintiff can make a *prima facie* showing that an agency excluded adverse information from the record by proving that the documents at issue (1) were known to the agency at the time it made its decision, (2) are directly related to the decision, and (3) are adverse to the agency's decision.

*Fund for Animals*, 391 F. Supp. 2d at 198 (citations omitted).

## III. Argument:

### A.  Defendants are attempting to cloud the issue.

#### 1.  Defendants downplay the gravity of the *SCI* case and the Court's orders stemming from that case.

In their Opposition to Plaintiffs' Second Motion to Compel Supplementation of the

Administrative Record ("Defendants' Opposition"), Defendants attempt to cloud the issue in a

number of ways.   First, Defendants misrepresent gravity of Court's orders in *SCI*.

Understandably, Defendants portray the events surrounding SCI in the light most favorable to

them.  However, Defendants' Introduction takes this favorable light a bit too far, portraying *SCI* as little more than a misunderstanding or a procedural mishap, and in any case certainly not an instance where Defendants committed any wrongs.  That, however, is inaccurate.  For example, during the course of *SCI*, Defendants issued denials based on the guidelines *after* they represented to the Court that they would not.  In their Opposition, Defendants attempt to explain away that indiscretion thusly:

> Although the Service had agreed to suspend use of the guidelines, at the time that representation was made, advice based on the guidelines had already been given internally, and the Service therefore subsequently issued three trophy import application denials using the guidelines. Recognizing the seeming incongruity with its prior representation to the court, the Service "provide[d] prompt notice to the  court and plaintiff after it took the action."

Defs. Opp. at 1 (Dkt. 36), quoting *SCI*, 1994 U.S. Dist. LEXIS 18183 at *32.  Unfortunately for Defendants, the Court has already expressed its dissatisfaction with this "justification":

> Although Defendant tries to justify these denials because they were based on "advice" which was issued prior to the preliminary injunction hearing, the Court cannot accept this justification.

*SCI*, 1994 U.S. Dist. LEXIS 18183 at *34.  In addition, in their Opposition, Defendants summarize the sanctions imposed during *SCI*, then wrap up with, "Ultimately, the Service withdrew the guidelines and the parties stipulated to the dismissal of SCI's complaint.  The Safari Club case was closed on March 31, 1995." Defs. Opp. at 2 (Dkt. 36).  This much is true, but it is only a half-truth.  Just as they have excluded from the administrative record documents that are disfavorable to their decision, Defendants have excluded from their Opposition the Court's language that is disfavorable to their case.  To more adequately explain the Court's decision in *SCI*, it should be noted that the Court said, "This order will ensure that defendant this time lives up to the representations made to this Court and plaintiff," and "defendant should be

aware that violations of today's order will not be treated lightly."  *SCI*, 1994 U.S. Dist. LEXIS 18183 at *33-34.

Later, in awarding the plaintiffs $340,725.58 in attorney's fees, the Court noted that the case "involved **contemptuous conduct** by the defendant, which led to time consuming sanctions litigation engendered by the **defendant's wrong-doing** in this litigation." *See* Memorandum and Order, *SCI*, Civ. No. 91-2423 (RCL) (signed May 6, 1997, filed May 7, 1997) (emphasis added) (attached).  Defendants were not innocent parties as their Opposition suggests.

## 2.  Defendants make much ado over the passage of time.

In at least five instances throughout their Opposition, Defendants make reference to the fact that many years have passed since *SCI*.  *See* Defs. Opp at ii ("a 15-year-old lawsuit"), at 3 ("which is now 15 years old"), at 8 ("15 years ago"), at 12 ("15 years earlier"), and at 20 ("closed for 15 years").  Plaintiffs fail to see the relevance of these repeated references to time. Time alone has no effect on the law; the power of a court's order does not diminish with the passage of time.  Indeed, this Court's mandate to Defendants still applies.  Defendants have not somehow accumulated forgiveness or immunity from it.  Furthermore, while a number of years have *now* passed since *SCI*, that was not true when these applications were first submitted.  At that time (2000), *SCI* was relatively recent: the order granting attorney's fees had been issued only three years before, in 1997.  *See* Memorandum and Order, SCI, Civ. No. 91-2523 (RCL) (attached).  The subsequent treatment of those applications is inextricably linked to *SCI*, and any unreasonable delay in the processing of those applications has been caused by Defendants.  The only apparent explanation for Defendants' repeated mention of "15 years" is Defendants' attempt to characterize *SCI* as inapplicable ancient history.  Once again the Defendants are applying the same unpublished criteria contrary to the Order of Dismissal.

### 3. Defendants improperly imply that the case suffers from jurisdictional issues.

Defendants attempt to attack the Court's jurisdiction over this matter in multiple ways, including citing a Supreme Court case that is irrelevant to the case at bar (*Kokkonen v Guardian Life Ins. Co.*, 511 U.S. 375 (1994).) and making multiple references to lack of "continuing jurisdiction." In *Kokkonen*, as Defendants well summarize, "the Court held that the district court lacked subject matter jurisdiction over a claim to enforce a settlement agreement absent an independent basis for jurisdiction." Defs. Opp. at n. 9, citing 511 U.S. at 381-82. While true, that has nothing to do with the case at bar. In *Kokkonen*, a state-law case was removed to federal court based on diversity of citizenship, but the parties settled the matter and the case was dismissed. *Kokkonen*, 511 U.S. at 376. Thereafter, due to a disagreement regarding the parties' obligations under the settlement agreement, Guardian Life sought to have the federal district court enforce the terms of the settlement agreement, despite the fact that the agreement had not been mentioned in the Court's order, nor had its terms been incorporated into that order. *Id.* The Supreme Court ultimately held that the district court did not have jurisdiction over the breach-of-contract claim, which should have been brought in state court. *Id.* Here, however, Plaintiffs are not asserting a state-law claim. This Court properly has jurisdiction over this federal issue, independent of any relationship to *SCI*. The fact that *SCI* was before this very Court is coincidental. Furthermore, the *Kokkonen* Cour stated that its holding would have been different if the obligations to which the parties stipulated had been made part of the order of dismissal. *Id.* at 381. "In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* Here, in fact, Defendants' obligations, which are now in dispute, **were** made part of the *SCI* Order of Dismissal; the Court

specified that the case was being dismissed "[u]pon consideration of the stipulation of the plaintiffs and defendant that this case be dismissed, [and] of the defendant that the elephant trophy import guidelines in dispute **are no longer in use or to be used** and their proposed adoption have been withdrawn by notice in the Federal register[.]"  Order of Dismissal, *SCI*, Civ. No. 91-2523 (March 30, 1995) (emphasis added) (attached).

In addition, Defendants make multiple references to the lack of continuing jurisdiction. Plaintiffs question the relevance of such a doctrine to this case.  Are Defendants suggesting that this Court must have reserved jurisdiction over the *SCI* case in order to compel Defendants to supplement the record with documents and materials arising from that case?   This case is not a "continuation" of *SCI*.  It is certainly related to *SCI* in many ways, but it is a distinct matter.  The rules for supplementation of the administrative record require that the documents requested have been before and considered by the decision makers, regardless of where they are found or, in the case of a court order, whether the current Court would have jurisdiction over the former matter. The jurisdictional issues that Defendants raise are simply additional diversion tactics intended to cloud the issues at hand. Plaintiffs respectfully request that the Court recognize these tactics for what they are.

**B.  The *SCI* materials were before Defendants and were considered by Defendants, and therefore should be included in the administrative record.**

As the parties have noted, the administrative record should include documents that were before the agency and were considered by the agency in making the decision at issue.  *See, e.g., Pac. Shores,* 448 F. Supp. 1; *Maritel, Inc.*, 422 F. Supp. 2d 188.  The *SCI* materials (including the guidelines, the stipulation that Defendants would refrain from using those guidelines, and the order enforcing that stipulation), meet both of these criteria.

First, these documents were certainly "before" Defendants.  They are not unrelated or even tangentially related; they are **directly** on point: these documents prohibit Defendants from using specific criteria in processing sport-hunted African elephant trophy import permits.  Therefore, it would be illogical to assert that this court mandate was somehow not "before" Defendants when they subsequently processed sport-hunted African elephant trophy import permits.  When anyone, including the government, is ordered by a court to refrain from doing something, especially with the warning that "violations of [the] order will not be treated lightly," (*SCI*, 1994 U.S. Dist. LEXIS 18183, at *33) it is understood that the order is "before" them at all times thereafter.  The Order of Dismissal perpetuated that interim order when it reiterated Defendants' promise that "the elephant trophy import guidelines in dispute are **no longer in use or to be used.**"  Order of Dismissal, *SCI*, Civ. No. 91-2523 (RCL) (March 30, 1995) (attached). The requested documents were before Defendants.

Secondly, these materials were considered by Defendants.  Webster defines "consider" as "to take into account."  Merriam-Webster's Collegiate Dictionary 266 (11th ed. 2003). Certainly, when making a decision, one must take into account not only what they are allowed to do, but also what they are not allowed to do.  In their Opposition, Defendants claim that they "did not consult the defunct guidelines."  Defs. Opp. at 7 (Dkt. 36), citing Van Norman Decl. at para. 6.  Perhaps Defendants mean to assert that they did not *use* the guidelines, which would be consistent with the Court's order.  (This, too, would be inaccurate, however, since the substance of the criteria used to deny Plaintiffs' import permit applications mirror the criteria forbidden by the Court in *SCI*.)  Nevertheless, the *SCI* materials were considered, at least indirectly.  *See Pac. Shores*, 448 F. Supp. 2d. at  4 (the whole record includes "all documents and materials that the agency directly or **indirectly** considered") (emphasis added, internal quotations omitted).  Since

these materials were before Defendants, were referenced in communications from Plaintiffs' counsel to Defendants, were referenced in Defendants' internal communications, and are precisely on point, they were "considered" by Defendants.

Because Defendants failed to include the *SCI* materials in the administrative record, Defendants assert that Plaintiffs must overcome the presumption in their favor by producing "concrete evidence" that these documents were "'before the decisionmakers.'"  Defs. Opp. at 7 (Dkt. 36) (quoting *Cape Hatteras*, 667 F. Supp. 2d at 114).   Then, Defendants distort *Cape Hatteras* to mean that Plaintiffs must produce such evidence that the materials "were considered."  *See* Defs. Opp. at 7.  In any event, Plaintiffs have met their burden.  What could more concretely evince that these materials were before Defendants than a court order regarding them? Defendants call attention to the reference to these materials in the Complaint (*see* Defs. Opp. at 8 (Dkt. 36).) which Defendants assert would not suffice, yet Defendants do not sufficiently address the *pre-decisional* references to *SCI*, both by Plaintiffs' counsel and by Defendants.  Despite how Defendants would like to characterize them, these documents and materials are not "merely mentioned" in the record, nor are they irrelevant items that just happen to be in Defendants' files.  On the contrary, the *SCI* documents and materials are pertinent and 100% applicable to the permitting decisions made by the Service.  Their significance to this case cannot be overstated.

One of the references that provides concrete evidence that the SCI materials were "before" the Service is the email from then-Deputy Director Kenneth Stansell to his juniors, noting that Plaintiffs' counsel was concerned that Defendants had "returned to the pre elephant law suit days." A.R. 504.  This email was sent in 2002, following meetings approximately two years after the first Plaintiff's permit application was filed, yet Defendants attempt to explain

away its relevance, noting that it was written "years before the permit decisions at issue in this case were even made."   Defs. Opp. at 10 (Dkt. 36).  Clearly, an on-topic email written after the applications were submitted and before they were denied is relevant, and provides evidence that Defendants were aware of and considered the information referenced therein (and, in this case, that the Assistant Director had met with the applicants' representative on that very issue). Nevertheless, Defendants assert that "if [the] email shows anything, it is that the Service made sure <u>not</u> to consult the withdrawn guidelines or any other guidelines" (*id*. at 11) as if purposely ignoring the Court's order from *SCI* or dragging out the permitting process for ten years would somehow make the order disappear.  It is unacceptable to know that a mandate exists, yet to deliberately ignore it.  Again, perhaps Defendants are trying to assert that they did not *apply* the guidelines.  That, however, is not the issue.[1] The issue is whether the guidelines, the Stipulation, the Order of Dismissal, and the other related materials were before Defendants, and whether Defendants *considered* them.  They were before Defendants and Defendants did consider them, either directly or indirectly.   Therefore, Defendants should be compelled to include these documents in the administrative record.

In their Opposition, Defendants rely heavily on *Midcoast Fishermen's Association v. Guiterrez*, 592 F. Supp. 2d 40 (D.D.C. 2008).  That case, however, is very different from the case at bar.  In *Midcoast Fishermen's Assoc.*, the Court denied the plaintiffs' motion to have the record supplemented with certain data, because, the Court noted, it "[would] not provide any 'background' useful to resolving the case."  *Id*. at *45.  Here, however, that is exactly what the

---

[1] Plaintiffs assert that Defendants did, in fact, apply the forbidden guidelines (or criteria that were substantially similar thereto), but that is an issue to be decided at a later time.  At this time, the issue is what was before the Defendants and considered, that is, what was taken into account. Inclusion of these documents will allow the Court to properly decide the issue of whether the guidelines were applied, when the time for that determination arises.

items at issue would provide: background useful to resolving the case.  In addition, the *Midcoast* Court noted that that case was "not a case where the agency **blatantly ignored** a **specific document** that was **readily available** and **directly on point**." *Id.*  (emphasis added).  Here, again, that is exactly what happened: Defendants blatantly ignored (per their own admission) specific documents that were readily available and directly on point.  Defendants' reliance on *Midcoast* is unfounded, as the cases are materially dissimilar.

Because the documents and materials from *SCI* were before Defendants when they made their permitting decisions and because Defendants considered these materials, either directly or indirectly (if only by knowingly deciding not to employ them), Plaintiffs respectfully request that Defendants be compelled to include the requested documents in the administrative record.

**C.  In the alternative, the documents and materials from *SCI* qualify for inclusion as extra-record evidence.**

The *SCI* materials fall within multiple exceptions for inclusion as extra-record evidence: the Service failed to consider factors that were relevant to its final decision (exception 2); the Service considered evidence that it failed to include in the record (exception 3); the case is rather complex (exception 4); the Service failed to take action for an unreasonable period of time (exception 6); and relief is at issue (exception 8).  *See Delano v. Roche*, 391 F. Supp. 2d 79, 88 (D.D.C. 2005); *Esch v. Yeutter*, 876 F. 2d 976, 991 (D.C. Cir. 1989).  Defendants assert that these exceptions only arise when there has been a showing of bad faith or improper behavior (Defs. Opp. at 16 (Dkt. 36)), which Plaintiffs do assert can be shown in this case.  Despite Defendants' contention otherwise, the *SCI* Order of Dismissal and Settlement Stipulation clearly imposed upon them a "legal obligation"; ignoring a legal obligation amounts to improper behavior at least, and perhaps bad faith as well.  Defendants simply refuse to acknowledge the

obvious obligations that this Court imposed upon them, claiming that "the order contained **no commitments** with regard to the timing or **substantive evaluation** of **any other future elephant trophy import permit applications**." *Id*. at 18 (emphasis added). This is simply untrue, as the Order of Dismissal reiterates Defendant's promise not to use the forbidden guidelines. *See* Order of Dismissal, *SCI*, Civ. No. 91-2553 (RCL) (March 30, 1995). In addition, it would be disingenuous to ignore the fact that the Court **ordered** Defendants to "**not use the guidelines to deny permit applications** until final guidelines are adopted" and "**not deny any permit application** without prior notice" to the Court and plaintiff. *SCI*, 1994 U.S. Dist. LEXIS 18183, at *33 (emphasis added). Nothing has transpired since that time that would dilute the power of the Court's order. In fact, the Order of Dismissal and the Memorandum and Order granting attorney's fees reinforce the significance of the case. If, as Defendants' claim, they were under no commitments regarding the "substantive evaluation" of any future elephant trophy import permit applications, the Court's orders would be meaningless. In fact, the Court directly addressed this point: "[P]laintiff's counsel expended considerable – and ultimately **successful** – effort attacking the **substance of the guidelines**." Memorandum and Order, *SCI*, Civ. No. 91-2523 (RCL) (May 1997) (emphasis added) (attached). Therefore, use of criteria of the same substance amounts to "using" the guidelines, regardless of whether the Defendants admit to that fact. The Court did not intend to ban the use of only a particular piece of paper; it was the **substance** of that paper that was at issue, and it was the **substance** that was forbidden.[2]

---

[2]     The Order of Dismissal articulated that the pending elephant trophy import permit applications would be processed "in accordance with the spirit and intent of the amendment to Resolution 2.11(c) of CITES made at the 9th Conference of the Parties in November 1994." Order of Dismissal, *SCI*, Civ No. 91-2523 (RCL) (March 30, 1995). Res. Conf. 2.11 is as applicable today as it was then. Therefore, in keeping with CITES and the Court's former orders, Defendants should not have been making biological determinations that take ten years,

Now, Defendants have revived the substance of the forbidden guidelines, but would like to pretend that it is in no way related to those guidelines.  Defendants even admit that their recently-used criteria were "consistent with certain provisions of the withdrawn guidelines." Defs. Opp. at 19.  What effect would an order and stipulation have, if Defendants are free to use the same substantive reasoning and simply claim that they did not used the "guidelines" because the guidelines were no longer in the same form?

**D.   Defendants fail to justify exclusion of Plaintiffs requested Item 10, which is necessary and should be made part of the administrative record.**

While it is not necessary to re-argue the reasons for requesting inclusion of each requested item, Plaintiffs would like to address one item in particular: Item 10 ("**Notes and information** provided by the Mozambique government representatives to Roddy Gabel and other in FWS face-to-face meetings in Reno.")  *See* Pl. Second Mot. To Compel, at iii (Dkt. 34) (emphasis added).   First, Defendants fail to provide any reason for excluding the notes from this meeting.  That meeting with officials from Mozambique was arranged specifically to address the issues and delay surrounding the issuance of Plaintiffs' elephant trophies properly taken in and exported from Mozambique.  The information shared and discussed at that meeting certainly should be included in the record regarding the subsequent denial of Plaintiff's import permits.  Furthermore, Defendants refuse to include the one item that they acknowledge receiving from the Mozambique officials during that meeting ("National Census of Wildlife in Mozambique, Final Report"), claiming that it had "no relevance" because it documented Mozambique's elephant population as of 2008, three years after the last Plaintiff took an elephant there (really

---

but, rather, should have accepted the biological findings of the exporting country.  *See* CITES Conf. 2.11 (Rev. 1994).

two years).  Defs. Opp. at 27 (Dkt. 36); *see also*, National Census of Wildlife 2008, Final Report (pertinent pages attached) ("National Census").   On the contrary, this document includes population data from 2006, **the very year that Plaintiff George Brown took an elephant and submitted his import permit applications**.  *See* Pl. Am. Compl. at para. 10 (Dkt. 29); *see also* National Census at 77 (attached). (Note that the elephant trophies at issue were taken in the following years: one in 2000, two in 2002, one in 2005, and one in 2006.  In addition, three permit applications were filed in advance of taking an elephant, one of which was specifically for 2005.  All applications were denied and two of those were denied after the population data not being produced.  *See* Pl. Am. Compl. at para. 8-12.)  Furthermore, the National Census confirms that the population of elephants in Mozambique was increasing at the time Plaintiffs' took elephants there and continued to increase thereafter. It also confirms other reports with similar findings: that the population of elephants in Mozambique was sufficient to sustain the takes at issue, and that the takes were in fact not detrimental to the species at the time they occurred. This document, which was hand-delivered to Defendants by Mozambican officials, as well as the notes taken at the meeting with those officials, was before Defendants, is absolutely pertinent to the processing of Plaintiffs' import permits as it contains elephant population data from the time in question, and should be included in the administrative record.  Defendants' characterization of this report, that it has not attached to its opposition, exemplifies its blindness throughout the ten years in issue and is certainly relevant to those permits denied after having received this information.  It contains a summary of the population estimates for all periods in issue as well as for trend data.

**E. Defendants fail to justify the exclusion of Plaintiffs' requested Item 9 and Plaintiffs' requested Item 11.**

Plaintiffs request the inclusion of "[t]he black-faced impala denial letters cited by Defendants in the existing administrative record" (item 9).  *See* Pl. Second Mot. to Compel, at ii (Dkt. 34).  Those letters are cited in a note hand-written by then-Deputy Director Ken Stansell to "edit [the elephant import permit denial letters] as per black-faced impala."  *See* A.R. 1928-29. Defendants attempt to justify the exclusion of these letters by citing the declaration of Timothy Van Norman, Chief, Branch of Permits.  In his declaration, Van Norman claims that the note was "merely a request to follow the same formatting and writing style that the Service had used in other recent letters."  Van Norman Decl., at para. 11.  First, as this was not a note authored by Van Norman, he has no personal knowledge of what was meant by it.  Therefore, Van Norman's declaration is insufficient to justify the exclusion of these documents.  Moreover, if the black-faced impala letters were considered and used as a formatting template, they should properly be included as part of the administrative record.

Item 11 requested for inclusion in the record is "[d]ocuments identifying the errors in the denials noted by Richard [Ruggerio], Ph.D."   *See* Pl. Second Mot. to Compel, at iii (Dkt. 34); *see also* A.R. 978.   Defendants claim that Dr. Ruggerio "presented his concerns only verbally" in discussions with Dr. Michael Kreger, and, therefore, that no documents regarding these exchanges exist.  Defs. Opp. at 26 (Dkt. 36).  As support for this proposition, however, Defendants cite only to the declaration of Van Norman.  *See* Van Norman Decl., at para. 13. Van Norman does not declare that he participated in these discussions, nor that he witnessed them.  *Id*.  Furthermore, Van Norman is not employed by the Division of Scientific Authority. Therefore, Van Norman has no personal knowledge on the subject and his declaration is insufficient to justify the exclusion of any such documents.  He is not even affiliated with the DSA which makes the CITES non-detriment determination.  He is with the DMA.  Since

Defendants provide no other support for their contentions on this matter, Plaintiffs reassert that Defendants should be compelled to include in the administrative record documents identifying the errors in the denials notes by Dr. Ruggerio, in whatever form they may exist, including, but not limited to, email messages or handwritten notes.

## IV.  Conclusion

The documents that Defendants have excluded from the record, while unfavorable to Defendants' position, are relevant and should be included in the administrative record, either as part of the record that was improperly excluded, or as pertinent extra-record evidence.   The exclusion of these records stems from Defendants' bad faith and ongoing refusal to fulfill their legal duties and obligations.   Therefore, Plaintiffs respectfully request that this Court compel Defendants to supplement the administrative record with the documents requested in Plaintiffs' Second Motion to Compel Supplementation of the Administrative Record.

Respectfully submitted this 17th day of September, 2010, by

_____
/s/

JOHN J. JACKSON, III
3240 S. I-10 Service Rd. W., Ste. 200
Metairie, LA  70001-6911
Tel: 504-837-1233
Fax: 504-837-1145
Email: jjw-no@att.net

*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

On September 17, 2010, I caused the foregoing REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION TO COMPEL SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD to be filed electronically via the Court's CM/ECF system.  All Parties registered to use the Court's CM/ECF system will receive Notice of and access to this filing *via* that system.

/s/
**JOHN J. JACKSON, III**