# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE A. FRANKS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> KEN SALAZAR, SECRETARY, <br> United States Secretary of the Interior, <br> et al., <br><br> Defendants. | Civil Action No. 09-942 (RCL) |

## MEMORANDUM AND ORDER

Plaintiffs Lawrence A. Franks, Steve Sellers, George J. Brown, Charles F. Robbins, Jesse R. Flowers, Jr., Jack Atcheson, and Conservation Force bring this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 et al., seeking judicial review of the denial of plaintiffs' elephant trophy import applications. Before the Court is plaintiffs' Second Motion to Compel Supplementation of Administrative Record [34]. Upon consideration of the motion, the opposition, the reply thereto, the applicable law, and the entire record herein, the Court will grant plaintiffs' motion as to Item 9 and part of Item 10, and will deny plaintiffs' motion as to all remaining items. The Court's reasoning is set forth below.

### I. INTRODUCTION

The Endangered Species Act ("ESA") provides a special rule for the African elephant, which it lists as a threatened species. *See* 50 C.F.R. § 17.40(e). As is relevant to this case, African elephant populations in Mozambique are included in Appendix I of the Convention on

1

International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). The ESA and CITES allow the importation of sport-hunted African elephant trophies into the United States only if certain conditions are met. These conditions include that a "determination is made that the killing of the animal whose trophy is intended for import would enhance survival of the species," 50 C.F.R. § 17.40(e)(iii)(C), and that the import is for purposes that would not be detrimental to the survival of the species, *id.* § 23.61.

Plaintiffs Lawrence A. Franks, Steve Sellers, and George J. Brown each sport-hunted at least one African elephant in Mozambique. Each plaintiff applied to defendant, the United States Fish & Wildlife Service ("the Service"), for a permit to import his trophy into the United States. Pls.' Amend. Compl. ¶¶ 8–10 [29]. Plaintiffs Charles F. Robbins and Jesse R. Flowers, Jr. prospectively applied for permits to import trophies potentially acquired in the future. *Id.* at ¶¶ 11–12. On February 23, 2009, the Service denied plaintiffs' permit applications. *Id.* at ¶ 3. On September 3, 2009, the Service denied plaintiff Brown's remaining applications for elephants taken in the Niassa Reserve. *Id.* at ¶¶ 158, 161(a). Plaintiffs challenge these denials.

On June 30, 2010, this Court denied [28] plaintiffs' first motion to compel [20] without prejudice until the Service supplemented the administrative record in response to plaintiffs' amended complaint. Defendants subsequently filed notice [30] that, having filed a second amended administrative record in February 2010, they do not anticipate further supplementation. Defendants aver that the record presently on file is "the complete record for all permit decisions challenged in this case," including the new allegations in plaintiffs' amended complaint.

On August 13, 2010, plaintiffs filed their second motion to compel supplementation of the administrative record [34]. Plaintiffs seek to add two categories of documents to the record, asserting that these documents were part of the Service's record when it denied plaintiffs'

applications. Alternatively, if the Court finds that the documents were not part of the Service's record, plaintiffs request that they be included as extra-record evidence. The Service contends that it did not consider the first category of documents (Items 1–6) in deciding whether to grant plaintiffs' permit applications. The Service further argues that the documents do not fall into any exception for extra-record review. With regard to the second category of documents (Items 7–11), the Service contends that the documents either do not exist or were not relevant to the permit decisions at issue.

## II. STANDARD OF REVIEW

As the ESA does not specify a standard of review, the APA governs judicial review of decisions made under the ESA. *Gerber v. Norton*, 294 F.3d 173, 178 & n.4 (D.C. Cir. 2002) (citing *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982)). A court's review of agency action is generally confined to the administrative record that was before the agency when it made its decision. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973). There are exceptional circumstances in which supplementation of the administrative record is appropriate due to some deficiency. *Motor & Equipment Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1105 n.18 (D.C. Cir. 1979). Likewise, it is an extraordinary case when a court considers extra-record evidence in reviewing agency action.

### *A. Supplementing the Record*

Judicial review of agency action under the APA is generally confined to the administrative record. *See* 5 U.S.C. § 706. The record is comprised of those documents that were before the administrative decisionmaker. *Citizens to Preserve Overton Park*, 401 U.S. at 420; *see also* Fed. R. App. P. 16(a) ("The record consists of the order involved, any findings or reports on

which that order is based, and the pleadings, evidence, and other parts of the proceedings before the agency."). A court should consider neither more nor less than what was before the agency at the time it made its decision. *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). It is the agency's responsibility to compile for the court all information it considered either directly or indirectly. *Amfac Resorts, L.L.C. v. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (Lamberth, J.). The agency is entitled to a strong presumption of regularity in having done so. *Cape Hatteras Access Pres. Alliance v. U.S. Dept. of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009) (Lamberth, J.); *Sara Lee Corp. v. American Bakers Ass'n*, 252 F.R.D. 31, 33 (D.D.C. 2008).

As this Court has noted, "A court that orders an administrative agency to supplement the record of its decision is a rare bird." *Cape Hatteras*, 667 F. Supp. 2d at 112. To overcome the strong presumption of regularity to which an agency is entitled, a plaintiff must put forth concrete evidence that the documents it seeks to "add" to the record were actually before the decisionmakers. *Sara Lee Corp*, 252 F.R.D. at 34. If an agency did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate. *See, e.g., Natural Res. Def. Council v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). A plaintiff cannot merely assert, however, that materials were relevant or were before an agency when it made its decision. *Sara Lee Corp.*, 252 F.R.D. at 34; *Pac. Shores Subdivision Cal. Water Dist. V. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2005) ("Pacific Shores cannot meet its burden simply by asserting that the documents are relevant, were before or in front of the Corps at the time it made its decision, and were inadequately considered."). Instead, the plaintiff "must identify reasonable, *non-speculative grounds* for its belief that the documents were *considered* by the agency and not included in the record." *Pac. Shores*, 448 F. Supp. 2d at 6 (emphasis

4

added) (citing *Novartis Pharms. Corp. v. Shalala*, No. 99-323, 2000 WL 1769589, at *1, *4 (D.D.C. Nov. 27, 2000)).

### B. Extra-Record Evidence

When reviewing an agency decision, a court will go beyond the agency's record only in exceptional cases. *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). As this Court has explained, the exceptions permitting extra-record review are limited. *Cape Hatteras*, 667 F. Supp. 2d at 115. Plaintiffs cite *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), in which the Court of Appeals identified eight such exceptions. The Service disputes the extent to which these exceptions apply in this case.

*Esch* involved a challenge to the procedural validity of the Secretary of Agriculture's denial of subsidy payments. *Id.* at 984. The Court of Appeals noted that the rule that review of agency action is normally confined to the record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." *Id.* at 991. In *Esch*, however, the procedural validity of the Secretary's actions "remain[ed] in serious question." *Id.* While not foreclosing the use of extra-record evidence in reviewing substantive decisions, the Court explained that "[p]articularly in the [procedural] context, it may sometimes be appropriate to resort to extra-record information to *enable judicial review to become effective*." *Id.* (emphasis added). The Court then enumerated "exceptions countenancing use of extra-record evidence *to that end.*" *Id.* (emphasis added).

Thus, the *Esch* exceptions are more appropriately applied in actions contesting the procedural validity of agency decisions. *See Cape Hatteras*, 667 F. Supp. 2d at 115. But even in such cases, the *Esch* exceptions are "to be sparingly applied to only those cases where extra-record evidence was necessary to make judicial review effective." *Id.*; *see Calloway v. Harvey*,

590 F.Supp.2d 29, 38 (D.D.C. 2008). Indeed, the Court of Appeals recently stated that "[t]he APA limits judicial review to the administrative record 'except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Theodore Roosevelt Conservation P'ship v. Salazar*, Nos. 09-5162, 09-5193, 2010 WL 2869778 at *13 (D.C. Cir. July 23, 2010) (quoting *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)).

### III. DISCUSSION

#### A. *Items 1–6*

##### 1. Supplementation of the record with the materials requested in Items 1–6 is not appropriate.

The first category of documents that plaintiffs seek to add to the record (Items 1–6) consists of court filings and materials related to a case previously before this Court, *Safari Club International v. Babbitt*, No. 91-2523, 1994 U.S. Dist. LEXIS 18183 (D.D.C. Dec. 14, 1994). In that case, Safari Club International ("SCI") challenged the Service's internal guidelines regarding elephant trophy imports. *Id.* at *5. Several of SCI's claims arose from the fact that the guidelines had not undergone public notice and comment. *Id.* After the Service submitted the guidelines to the Federal Register for public comment, the Court dismissed those claims as moot. *Id.* at *12.

In *Safari Club*, the Service represented to the Court that it would not use its guidelines to deny permit applications pending notice and comment. *Id.* at *31. Based on this representation, the Court denied SCI's motion for a preliminary injunction. *Id.* The Service subsequently denied three permit applications for elephants taken in Ethiopia. *Id.* at *32. In light of the Service's prior representation, the Court found it improper that the Service had denied the permits without

advance notice to the Court and to SCI. *Id.* Accordingly, the Court sanctioned the Service's conduct and ordered that it "not use the Guidelines to deny permit applications, until final Guidelines are adopted" and "not deny any permit application without prior notice to this Court and plaintiff, pending further order of this court." *Id.* at *33.

The Service ultimately withdrew the guidelines, and the parties stipulated to the dismissal of SCI's complaint. Stipulation, *Safari Club*, No. 91-2523 (Mar. 31, 1995). The Service stipulated that the "guidelines in dispute are no longer in use or to be used and their proposed adoption have been withdrawn." Order of Dismissal, *Safari Club*, No. 91-2523 (Mar. 31, 1995). The Service further stipulated that "no permits from other nations are outstanding except for three from Ethiopia . . . that are being reconsidered for issuance in accordance with the letter and intent of the amendment to Resolution 2.11(c) of CITES." *Id.* On the basis of these stipulations, the Court dismissed SCI's complaint and ordered that the Service "no longer [] use the elephant trophy import guidelines that have been in issue." *Id.*

Plaintiffs in the present case seek inclusion of the *Safari Club* materials in the administrative record. They argue that these materials were before the Service and that the Service considered them, at least indirectly, when it made its permit decisions. In support of their argument, Plaintiffs assert that the materials were "directly on point" and "pertinent" to the decisions in this case. Pls.' Reply at 10–11 [38]. Specifically, plaintiffs contend that the Service was obliged to consider the Court's order in *Safari Club* because it prohibits the Service from using its withdrawn guidelines. *Id.* at 12. Plaintiffs further state that they referenced *Safari Club* in their initial applications and throughout the permitting process. Pls.' Mot. at 1, 15 [34]; Pls.' Reply at 11 [38]. Additionally, plaintiffs assert that *Safari Club* is "mentioned repeatedly in the administrative record." Pls.' Mot. at 10 [34]. As the Service notes, however, three of the four

documents cited in support of this assertion were authored by plaintiffs or do not mention *Safari Club*. Defs.' Opp'n at 9–10 [34]. Plaintiffs' reply thus focuses on a single e-mail written by Kenneth Stansell, then-Assistant Director of International Affairs for the Service. Pls.' Reply at 11–12. In that e-mail, Mr. Stansell told colleagues that plaintiffs' attorney had suggested that the Service "ha[d] returned to the pre elephant law suit days." AR 504. Mr. Stansell then stated that plaintiffs' attorney could "cause us all a great deal of trouble, particularly if we give him ammunition to shoot at us." *Id.*

The Service argues that it did not consider the *Safari Club* materials in deciding whether to grant plaintiffs' permits. In support of its argument, the Service has provided the sworn declaration of Timothy J. Van Norman, Chief of the Branch of Permits. Mr. Van Norman was "the initial decisionmaker on the majority of the import permit applications at issue." Van Norman Decl. ¶ 1 [36-2]. He states that the Service neither directly nor indirectly considered any of the *Safari Club* materials identified by plaintiffs. *Id.* at ¶¶ 3–8. Specifically, he declares that the Service "did not consult or rely upon the withdrawn guidelines" at issue in *Safari Club* when making the permit decisions in the present case. *Id.* at ¶ 6.

The Court does not find supplementation of the record appropriate. Plaintiffs have not provided the concrete evidence necessary to overcome the strong presumption of regularity owed to the Service. Plaintiffs cannot merely assert that the *Safari Club* materials were relevant or were before the Service when it made its decisions. *See Sara Lee Corp.*, 252 F.R.D. at 34; *Pac. Shores*, 448 F. Supp. 2d at 6. Indeed, neither the materials' purported relevance nor plaintiffs' references to *Safari Club* during the permitting process constitute concrete evidence that the Service considered the materials, either directly or indirectly.

Further, as courts in this District have held, references to documents in the administrative record do not prove that that the documents were "before" the deciding agency. *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009) (finding that the mere mention of a document in the record does not "indicate consideration of [its] contents"); *Cape Hatteras*, 667 F. Supp. 2d at 114 (finding that references to a biological opinion in the record do "not prove that it was before the agency when it made its decision"). Among the documents cited to support plaintiffs' argument that *Safari Club* is "mentioned repeatedly" in the record, Mr. Stansell's e-mail is the sole document authored by the Service that refers to *Safari Club*. But Mr. Stansell's mention of the "pre elephant law suit days" gives no indication that the Service actually considered the *Safari Club* materials. Plaintiffs' argument to the contrary is merely speculative. *See Pac. Shores*, 448 F. Supp. 2d at 6.

The evidence shows that the Service withdrew the *Safari Club* guidelines fifteen years ago and has not used them since. *Withdrawal of Proposed Guidelines on African Elephant Sport-hunted Trophy Permits*, 60 Fed. Reg. 12969 (Mar. 9, 1995); Van Normal Decl. ¶ 6 [36-2]. Plaintiffs' evidence does not overcome the strong presumption that the Service properly designated its administrative record. *See Pac. Shores*, 448 F. Supp. 2d at 6 ("It is the Corps that did the 'considering,' not Pacific Shores. Because Pacific Shores is unable to show by clear evidence that the Corps' certified record is incomplete . . . the Corps is entitled to the presumption that it properly designated the record.").

### 2. Items 1–6 do not fall into any exceptions for extra-record review.

Alternatively, plaintiffs argue that the *Safari Club* materials fall into several *Esch* exceptions for extra-record review. Specifically, they assert that the Service failed to consider factors relevant to its final decision (exception 2); that the Service considered evidence that it

9

failed to include in the record (exception 3); that the case is so complex that the Court needs more evidence to enable it to understand the issues clearly (exception 4); that the Service is being sued for failure to take action (exception 6); and that relief is at issue (exception 8).

The Service cites this Court's opinion in *Cape Hatteras* to argue that the *Esch* exceptions are narrower than plaintiffs suggest. The Court notes, however, that the exceptions are arguably applicable in light of plaintiffs' procedural claims. *See* Pls.' Mot. at 18 [34]. Nevertheless, the Service correctly asserts that a court should consider extra-record materials only when there is a "'strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Theodore Roosevelt Conservation P'ship*, 2010 WL 2869778 at *13 (quoting *Commercial Drapery Contractors*, 133 F.3d at 7).

The Court finds plaintiffs' invocation of the *Esch* exceptions unpersuasive. Exception 3 does not apply because, as the Court concluded above, plaintiffs have offered no concrete evidence that the Service considered the *Safari Club* materials and failed to include them in the record. As to exception 4—which plaintiffs suggest is "perhaps" applicable—the Court does not find this case is so complex that resort to extra-record evidence is warranted. With regard to exception 6, the Service has denied all permit applications at issue and thus has not failed to take action in this case. *See* Pls.' Amend. Compl. ¶¶ 3, 161(a) [29].[1] Exception 8 is inapplicable because the form of relief is not in issue here.[2]

---

[1] Plaintiffs argue that some of their permits—those for elephants taken in the Niassa Reserve—were not denied until after they filed this suit. Pls.' Mot. at 19 [34]. Nevertheless, the fact remains that the Service has taken action on the Niassa Reserve permits. *See* Pls.' Amend. Compl. ¶ 161(a). Moreover, the Service's alleged delay in processing these permits does not constitute a "failure to take action."

[2] When reviewing agency action, the proper remedy is for a court to vacate the challenged action and remand to the agency for further proceedings consistent with its opinion. *Florida Power & Light Co.*, 470 U.S. at 744. Plaintiffs have not indicated why such a remedy would be improper in this case.

10

In raising exception 2, plaintiffs argue that the *Safari Club* materials were relevant to the permit denials at issue. Pls.' Mot. at 18 [34]; Pls.' Reply at 13–15 [38]. Plaintiffs suggest that the *Safari Club* Order of Dismissal and Stipulation of Dismissal imposed a continuing legal obligation with regard to elephant trophy permits, which the Service ignored in this case. Pls.' Reply at 13–15 [38]. Specifically, plaintiffs allege that the Service has re-adopted its defunct guidelines, thereby violating the court's order and the parties' stipulation in *Safari Club*. Pls.' Mot. at 10, 12 [34].

Plaintiffs mischaracterize the relevance of *Safari Club* to the present case. First, the Stipulation of Dismissal was between the Service and the plaintiffs in *Safari Club*. The Service was not obliged to consider the stipulation in the present case, which involves different plaintiffs challenging different permit denials. Second, in dismissing SCI's complaint, the Court imposed no obligations beyond its order that the Service refrain from using the guidelines at issue.[3] *See* Order of Dismissal, *Safari Club*, No. 91-2523 (Mar. 31, 1995). As noted, the Service withdrew those guidelines fifteen years ago. 60 Fed. Reg. 12969. Plaintiffs have offered no concrete evidence that the Service considered the withdrawn guidelines in this case. Thus, the Order of Dismissal was not a relevant factor that the Service "failed to consider."

Finally, plaintiffs suggest that the requested materials are critical to their ability to prove that the Service has re-adopted its defunct guidelines. But plaintiffs' allegations are not grounds for the Court to consider extra-record materials. As noted above, the Service did not act disingenuously by not considering the *Safari Club* materials. Further, the Court is confident that the *Safari Club* materials are not necessary for effective review of the permit decisions in this case. Thus, there has been no strong showing of bad faith or improper behavior, nor is the record

---

[3] The Court's order regarding the outstanding Ethiopian permits has no relevance here.

11

so bare that it frustrates judicial review. *See Theodore Roosevelt Conservation P'ship*, 2010 WL 2869778 at *13.

### B. *Items 7–11*

The second category of documents that plaintiffs seek to add to the record (Items 7–11) consists of certain documents referenced in the administrative record. The Court will address each item in turn.

#### 1. Item 7

In Item 7, plaintiffs request the inclusion of an "appeal package" referenced at AR 1827 in an e-mail authored by then-Deputy Director Ken Stansell. Pls.' Mot. at 20 [34]. Mr. Van Norman states in his declaration that no appeal package exists for the permit decisions in this case. Van Norman Decl. ¶ 9 [36-2]. In support of this statement, the Service cites an e-mail from Mr. Van Norman to Mr. Stansell stating that no appeal package was prepared. *See* AR 1829–1830; Van Norman Decl. ¶ 9 [36-2]. Absent concrete evidence that such a package was before the Service, the Court will deny plaintiffs' request in Item 7.

#### 2. Item 8

In Item 8, plaintiffs request the inclusion of a "briefing document" referenced at AR 1829–1830 in an e-mail authored by Mr. Van Norman. Pls.' Mot. at 20 [34]. Mr. Van Norman states in his declaration that the briefing document mentioned in his e-mail was prepared for a different permit appeal pertaining to the black-faced impala. *See* AR 1829–1830; Van Norman Decl. ¶ 10 [36-2]. He states that there is no similar briefing document with respect to the permit decisions in this case. Van Norman Decl. ¶ 10 [36-2]. Absent concrete evidence that such a document was before the Service, the Court will deny plaintiffs' request in Item 8.

#### 3. Item 9

12

In Item 9, plaintiffs request the inclusion of the "black-faced impala denial letters" referenced at AR 1928–1929. Pls.' Mot. at 20 [34]. In the margin of a draft letter denying Plaintiff Franks' permit appeal, Mr. Stansell wrote "edit as per black-faced impala." AR 1928–1929. Plaintiffs contend that the letters are needed to make sense of the denial of Mr. Franks' appeal. Mr. Van Norman states in his declaration that Mr. Stansell's note was merely a request to follow the style that the Service had used in letters denying permit appeals for black-faced impalas. Van Norman Decl. ¶ 11 [36-2]. He further states that the note did "not request[] the Service to use anything in the black-faced impala denial letters as a substantive basis for making the decision with respect to Franks' permit application appeal." *Id.* In their reply, plaintiffs contend that Mr. Van Norman did not author the note and thus has no personal knowledge of what it means. Pls.' Reply at 17 [38]. Plaintiffs further argue that the letters should be in the record even if the Service used them only as a formatting template. *Id.*

The Court finds supplementation of the record appropriate. Plaintiffs have offered non-speculative grounds for their belief that the Service considered the letters when making the permit decisions at issue. *See Pac. Shores*, 448 F. Supp. 2d at 6. Even if the Service referred to the letters only for formatting purposes, there is no reason to exclude them from the record. Accordingly, the Court will grant plaintiffs' request in Item 9.

### 4. Item 10

In Item 10, plaintiffs request the inclusion of "notes and information" provided to the Service by Mozambique government representatives at a meeting in Reno, Nevada. Pls.' Mot. at 20 [34]. Roddy Gabel references the meeting at AR 1930 in an e-mail to Mr. Van Norman. In the e-mail, Mr. Gabel asks Mr. Van Norman whether he is confident about moving forward with the permit denials "[g]iven what the Mozambicans provided to us in Reno." AR 1930. Mr. Van

13

Norman states in his declaration that the Service received only one document in Reno, entitled National Census of Wildlife in Mozambique, Final Report ("National Census"). Van Norman Decl. ¶ 12 [36-2]. He further states that the National Census contains the results of a survey conducted in 2008, "well after the time frame in which the applicants harvested their elephant trophies in Mozambique." *Id.* Mr. Van Norman asserts that the National Census post-dated plaintiffs' elephant hunts and thus had no relevance to the permit decisions in this case. *Id.*

In their reply, plaintiffs repeat their request for notes from the Reno meeting. They further argue that the National Census includes population data from 2006—the same year that plaintiff Brown took an elephant and submitted a permit application. Pls.' Reply at 15–16 [38]; *see* Pls.' Am. Compl. at ¶ 10 [29]. Plaintiffs thus assert that the National Census was before the Service and was relevant to the permit decisions in this case.

At the outset, the Court notes that Mr. Gabel's e-mail does not refer to plaintiff Brown's 2006 application. Rather, it refers to permits for elephants taken or proposed to be taken between 2000 and 2005. *See* AR 1930. The National Census does not include data for those years. Thus, its relevance to the permit denials referenced in Mr. Gabel's e-mail is questionable.

Nevertheless, the Court finds supplementation of the record appropriate. Mr. Gabel's e-mail asks about moving forward with the denials "[g]*iven* what the Mozambicans provided us in Reno." AR 1930 (emphasis added). The Service received the National Census from Mozambique government officials in Reno. Van Norman Decl. ¶ 12 [36-2]. Plaintiffs have identified non-speculative grounds for their belief that the Service considered the National Census in some context during its decisionmaking process. *See Pac. Shores*, 448 F. Supp. 2d at 6. Accordingly, the Court will grant plaintiffs' request in Item 10 for the National Census received from Mozambique government officials.

14

To the extent that Item 10 seeks "notes" from the meeting in Reno, the Court will deny the request. Plaintiffs provide no evidence that such notes exist, thus giving the Court no grounds to grant their request.

### 5. Item 11

In Item 11, plaintiffs request the inclusion of "documents identifying the errors noted by Richard Ruggiero, Ph.D." Pls.' Mot. at 21 [34]. Plaintiffs' request refers to an e-mail at AR 978 from Mr. Gabel to Michael Kreger, then a biologist with the Division of Scientific Authority. The e-mail references a conversation with Richard Ruggiero of the Division of International Conservation. AR 978. In that conversation, Mr. Gabel and Dr. Ruggerio discussed the DSA's finding on Mozambique elephant trophies taken between 2000 and 2005. *Id.* According to the e-mail, Dr. Ruggerio advised Mr. Gabel that some statements in the finding were incorrect. *Id.*

Plaintiffs contend that the record omits unspecified documents identifying the errors noted by Dr. Ruggerio. Pls.' Mot. at 22 [34]. Mr. Van Norman states in his declaration that, "[b]ased on subsequent verbal discussion between Dr. Kreger and Dr. Ruggiero, DSA determined that there was no basis for revising their original finding, and no subsequent revision was undertaken." Van Norman Decl. ¶ 13 [36-2]. Mr. Van Norman further states that Dr. Ruggiero presented his concerns verbally, not in writing, and that therefore the requested documents do not exist. *Id.* In their reply, plaintiffs argue that Mr. Van Norman did not participate in Dr. Kreger's discussions with Dr. Ruggiero and thus has no personal knowledge on the subject. Pls.' Reply at 17 [38].

The Court does not find supplementation of the record appropriate. Mr. Gabel's e-mail merely states that Dr. Ruggerio "advised [him] that some statements in [the DSA finding] are incorrect." AR 978. There is no evidence, in the e-mail or elsewhere in the record, that Dr.

Ruggiero's concerns were documented. Indeed, Mr. Gabel's email asks Dr. Kreger to "talk to" Dr. Ruggerio about the DSA finding. *Id.* This lends support to Mr. Van Norman's statement that Dr. Ruggiero presented his concerns verbally, not in writing. Plaintiffs have not offered non-speculative grounds for their belief that the requested documents exist, much less that the Service considered them. *See Pac. Shores*, 448 F. Supp. 2d at 6. They therefore have not overcome the strong presumption of regularity to which the Service is entitled in compiling its record. Moreover, without evidence that the documents exist, there are no applicable exceptions for extra-record review. Accordingly, the Court will deny plaintiffs' request in Item 11.

### IV. CONCLUSION

For the reasons provided above, it is hereby

ORDERED that plaintiffs' motion as to Item 9 is GRANTED; and it is further

ORDERED that plaintiffs' motion as to Item 10 is GRANTED in part, and that the Service shall supplement its administrative record with the National Census of Wildlife in Mozambique, Final Report; and it is further

ORDERED that plaintiffs' motion as to any other documents requested in Item 10 is DENIED; and it is further

ORDERED that Plaintiffs' motion as to all other items is DENIED.

**SO ORDERED** this 5th day of November 2010.

ROYCE C. LAMBERTH
Chief Judge
United States District Court

16